**Saunders v. Latrobe Area Hospital, Inc.**

*John A. Caputo,* for plaintiffs.

*George M. Weis* and *James J. McElligott,* for defendants.

FRANKSTON, *Administrator,* April 17, 1980—On December 31, 1979, defendants Latrobe Area Hospital and J. Steven Carter, M.D., filed a motion for partial summary judgment pursuant to Pa.R.C.P. 1035. Thereafter, plaintiffs filed an answer containing new matter, defendants filed a reply thereto and on January 21, 1980 we issued an order establishing a schedule for the submission of briefs and affidavits. On March 3, 1980, oral argument was held by means of a telephone conference call. All parties were then given an opportunity to submit supplemental affidavits dealing with the factual issues raised therein. The matter is now ripe for decision.

The case involves the alleged negligent and grossly negligent administration to wife-plaintiff of various tranquilizing drugs which, plaintiffs allege, resulted in cardiac and respiratory arrest causing severe brain damage. At the time of this occurrence, wife-plaintiff was receiving voluntary inpatient treatment in the mental health unit of Latrobe Area Hospital.

Defendants' motion requests that the administrator enter partial summary judgment in favor of defendants on the basis that they are persons or entities entitled to the immunities provided in section 603 of the Mental Health and Mental Retarda-

tion Act of 1966[1] and section 114 of the Mental Health Procedures Act.[2] In essence, defendants are requesting that this case proceed against them solely with regard to the allegations constituting gross negligence, incompetence or willful misconduct pursuant to the immunity sections above-

---

1. Act of October 20, 1966, P.L. (Sp. Sess. no. 3) 96, sec. 603, 50 P.S. §4603:

"§603. Immunities.

"No person and no governmental or recognized nonprofit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section."

2. Act of July 9, 1976, P.L. 817, sec. 114, as amended, 50 P.S. §7114:

"§114. Immunity from civil and criminal liability.

"(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

"(b) A judge or a mental health review officer shall not be civilly or criminally liable for any actions taken or decisions made by him pursuant to the authority conferred by this act."

(Administrator's note: The Act of November 26, 1978, P.L. 1362, §1, amended this section to add "a peace officer" after the term "physician" and also added the term "voluntary treatment or" after the phrase "who denies an application for.")

cited. For the reasons stated below, defendants' motion for partial summary judgment is denied.

We are faced with the interpretation of two acts of the legislature which are interdependent, yet contradictory. We have been unable to locate any case authority which has squarely confronted and interpreted the issue here presented, i.e., the scope of the immunities provided by these acts.

## I. Immunity Granted by Section 603 Is Inapplicable

First, it is unclear whether section 603 of the Mental Health and Mental Retardation Act of 1966 now confers an immunity upon those persons or entities providing voluntary or involuntary treatment or care to one who is mentally ill or disabled.

The Mental Health Procedures Act of 1976 is entitled "An Act relating to mental health procedures; providing for the treatment and rights of mentally disabled persons, for voluntary and involuntary examination and treatment and for determinations affecting those charged with crime or under sentence." Section 102, entitled "Statement of policy," provides, inter alia: "It is the policy of the Commonwealth of Pennsylvania to seek to assure the availability of adequate treatment to persons who are mentally ill, and it is the purpose of this act to establish procedures whereby this policy can be effected." 50 P.S. § 7102. Section 103, entitled "Scope of act," provides, inter alia: "This act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. Section 501, entitled "Effective date and applicability," provides, inter alia: "This act shall take effect 60 days

after its enactment and shall thereupon apply immediately to all persons receiving voluntary treatment." 50 P.S. §7501. Also, section 502, the repealer section, repeals the definition of "mental disability" and eighteen sections (dealing with general provisions relating to facilities, admissions and commitments) of the Mental Health and Mental Retardation Act of 1966, except insofar as they relate to mental retardation or to persons who are mentally retarded, and also repeals all acts and parts of acts insofar as they are inconsistent with the Mental Health Procedures Act: 50 P.S. §7502(a) and (b).

Thus, we believe that the immunities provided in section 603 of the Mental Health and Mental Retardation Act of 1966 no longer apply to one who is mentally disabled or ill, but only to one who is mentally retarded. Also, as the immunity provided by section 603 of that act is phrased in terms of actions taken pursuant to the terms of that act, and as all rights and procedures for treatment of one who is mentally disabled or ill are now governed by the Mental Health Procedures Act, it follows that the immunity provided by section 603 of the Mental Health and Mental Retardation Act of 1966 is now limited to treatments rendered pursuant to that act, i.e., treatment of one who is mentally retarded.

## II. Immunity Granted by Section 603 Encompasses Only Admission and Discharge Decisions

However, we need not confine ourselves to such a narrow basis for the decision we reach today for we do not believe that the immunity as provided in section 603 of the Mental Health and Mental Retardation Act of 1966 is as broad and all-encompassing

as defendants contend. It is defendants' position that section 603 provides immunity for every facet and phase of admission, day-to-day care and treatment, and discharge of one who is mentally ill or disabled and that liability for any such actions would attach only in cases of gross negligence or incompetence. While we do agree that such is the case as it relates to admissions and discharges, we do not believe that immunity is provided for the negligent day-to-day care and treatment of one who is mentally disabled or ill after he or she has been voluntarily or involuntarily admitted to a treatment facility. Though we realize that psychiatric or psychological treatment is a relatively inexact science, we do not believe that this fact can provide a basis for dispensing with reasonably accepted standards of medical and psychiatric care and treatment once a mentally disabled or ill person has been admitted to a treatment facility. See Shea, Legal Standards of Care for Psychiatrists and Psychologists, Specialty Digest—Health Care Law, January, 1980, at 3. We see no evidence that the legislature intended to afford such a person a lower standard of medical care than that provided to patients suffering from a medical illness.

Section 603 of the Mental Health and Mental Retardation Act of 1966 speaks in terms of "any diagnosis, opinion, report or any thing done pursuant to the provisions of this act. . . ." A diagnosis, opinion or report is something utilized in the decision to admit or commit for treatment or to discharge a mentally disabled or ill individual. Though it may be argued that a diagnosis, opinion or report is essential in order to formulate a plan for care and treatment of an individual, the legislature could have included the terms "care," "treatment" or words having a similar import. This it did not do.

Nor do we believe that the term "or any thing done pursuant to the provisions of this act" can be construed to provide immunity for the alleged negligent treatment or care rendered to a mentally disabled or ill individual. This interpretation is reinforced by the rule of statutory construction by which general words are construed to take their meanings and be restricted by preceding particular words: 1 Pa.C.S.A. §1903(b).

None of the cases dealing with section 603 disclosed by our research or cited by the parties hereto are dispositive of the exact issue of what type of conduct is afforded this limited immunity. Most of the cases address the issue of whether section 603 impliedly repealed or waived the doctrine of sovereign immunity: Heifetz v. Philadelphia State Hospital, 22 Pa. Commonwealth Ct. 325, 348 A. 2d 455 (1975), reversed and remanded, 482 Pa. 386, 393 A. 2d 1160 (1978) (on the ground that Mayle v. Pa. Dept. of Highways, 479 Pa. 384, 388 A. 2d 709 (1978) abolished the doctrine of sovereign immunity); Freach v. Com., 23 Pa. Commonwealth Ct. 546, 354 A. 2d 908 (1976), reversed and remanded, 471 Pa. 558, 370 A. 2d 1163 (1977) (on the ground that the immunity provided by section 603 supersedes the common law doctrine of official immunity): Caronia v. Greenfeder, 30 Pa. Commonwealth Ct. 337, 374 A. 2d 741 (1977). Moreover, the factual settings of these cases deal with situations attempting to impose liability upon psychiatrists and hospitals for injuries inflicted upon third parties by a mentally ill or disabled individual who is alleged to have been improperly discharged from the confinement of a mental institution: Heifetz, supra; Freach, supra. They illustrate one of the limited situations to which we believe the immunity of section 603 is applicable.

Indeed, the only case which would tend to support defendants' position is Rhines v. Herzel, 481 Pa. 165, 392 A. 2d 298 (1978), a wrongful death and survival action brought by the administrator of the estate of Beverly L. Rhines, deceased. The complaint alleged that the deceased, a patient at Harrisburg State Hospital, was killed by Henry Miller, another patient having known homicidal tendencies, and was due to the failure of hospital personnel to provide for adequate supervision of Miller. In that case the Supreme Court reversed the dismissal of the complaint by the Court of Common Pleas of Dauphin County. Basing its decision on Freach v. Com., supra, it reinstated plaintiff's complaint which had previously been dismissed on the basis of sovereign immunity, absolute immunity and conditional immunity. However, in each of these cases the decision hinged upon the interplay of the various immunities which were then in force and did not squarely address the issue of the scope of conduct for which section 603 provides immunity.

### III. Immunity of Section 114 Is Granted Only To Individuals in Narrowly Defined Areas.

Lastly, we address the immunity provided by section 114 of the Mental Health Procedures Act, a statute which explicitly states the situations in which it extends immunity. The immunity provided by this section is granted only to *individuals* who participate in a decision that a person be examined, treated or hospitalized in some manner, that a person be denied these services, or that the restraints imposed upon a person be in some manner reduced. This section affords no immunity for the method or manner in which a patient is cared for or treated after the initial decision to provide

such treatment has been made. The only situation wherein it could be argued that section 114 provides an immunity for the method or manner of treatment is the limited area where the course of treatment involves a reduction of restraints previously imposed. Such reduction is not involved here.

Latrobe Area Hospital cannot claim the benefit of this section since it is not one of the enumerated individuals to whom such immunity applies, nor can J. Steven Carter, M.D., claim its benefits since the alleged negligent or grossly negligent acts of which he has been accused are not those over which this section spreads its protective cloak.

We therefore enter the following

## ORDER

And now, April 17, 1980, upon consideration of the foregoing opinion, it is hereby ordered and decreed that defendants J. Steven Carter, M.D. and Latrobe Area Hospital's motion for partial summary judgment is denied. This order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of this matter.